# UNITED STATES DISTRICT COURT
# MIDDLE DISTRICT OF FLORIDA
# TAMPA DIVISION

LAURIE STENNER-MUZYKA
    Plaintiff,

vs.                      CASE NO. 8:04-cv-984-T-17TBM

UNUM LIFE INSURANCE COMPANY
OF AMERICA

    Defendant.
_____/

## ORDER

      This cause is before the Court on Defendant's Motion for Summary Judgment, filed on April 29, 2005 (Dkt. 16), and Plaintiff's response thereto, filed May 31, 2005 (Dkt. 27); and Plaintiff's Motion for Summary Judgment, filed on May 2, 2005 (Dkt. 20), and Defendant's response thereto, filed June 2, 2005 (Dkt. 22).

## BACKGROUND

      Plaintiff, Laurie C. Stenner-Muzyka, was employed by BayCare Health System (BayCare) which offered disability insurance through Defendant, Unum Life Insurance Company of America (Unum). Plaintiff is a registered nurse and was employed by BayCare as a Home Health Clinician II. Plaintiff's last day of work was December 6, 1999. Plaintiff's claim was received by the Defendant on May 19, 2000. The claim was initially denied on August 30, 2000, and later was denied after appeal on November 30, 2000. The claim was reviewed again, and denied on February 15, 2001. After the denials of all her appeals, Plaintiff filed suit against Unum for denial of "own occupation" benefits. In that case, this Court entered Summary Judgment for the Plaintiff, and found that the Plaintiff was physically incapable of performing her own occupation, and, therefore, entitled to disability benefits.

      However, the policy states that after two years of disability payments, Unum will only continue making disability payments if Unum determines that the claimant is disabled from performing "any gainful occupation." The relevant language in the policy

states, "After [twenty-four] months of payments, you are disabled when Unum determines that due to the same sickness or injury, you are unable to perform the duties of any gainful occupation for which you are reasonably fitted by education, training, or experience."

Unum paid Muzyka the twenty-four months of disability payments as ordered by the court, and required by the plan under the "own occupation" terms of the policy. However, on June 5, 2002, the two years of payments required by the policy expired. Unum argues that Muzyka was no longer disabled under the terms of her policy because she was capable of performing some "gainful occupation."  Prior to completely terminating benefits, Unum continued to pay Muzyka under a reservation of rights until they reviewed her claim of total disability.  Unum informed Muzyka that the interim disability payments were in no way an admission of liability, and Unum does not seek to recover those payments now.

Muzyka has a long history of medical problems.  Her ailments listed in the record include: Fibromyalgia, Chronic Fatigue Syndrome, panic attacks, depression, tachycardia, mitral valve prolapse, palpitations, cervical myofasciitis, chronic cervical sprain/strain, thoracic sprain/strain, and lumbar sprain/strain.  The issue primarily before this Court is whether these ailments rendered Mrs. Muzyka totally disabled from performing any occupation.

During the investigation of the claim, Unum sent requests to Muzyka and her health care providers asking for information and records on her health conditions.   In a report dated January 13, 2003, Unum denied benefits finding that Muzyka had no psychiatric symptoms to review after March 1, 2002, and that she was experiencing less depressive and panic symptomology.  The denial stated that there was no evidence that Muzyka was psychiatrically or physically impaired from performing light to sedentary work, which was contrary to the opinion of Dr. Hasan, Plaintiff's personal physician. Unum reported that there was no objective evidence proving Dr. Hasan's diagnosis that Muzyka suffered from Chronic Fatigue Syndrome, palpitations, Fibromyalgia, panic attacks, and depression, and was, therefore, unable to perform any gainful occupation. The Unum policy described self-reported symptoms as a "condition you tell your doctor about, but are not verifiable using tests, procedures, and clinical examinations."   Unum

claimed that Doctor Hasan's report cited only self-reported symptoms, which the company could not verify with objective evidence, and that they were insufficient to establish total disability.

Unum also denied the claim stating that Muzyka was not under regular care of a physician as required by her health care plan. According to the plan, regular care is defined as:

> --You personally visit a doctor as frequently as is medically required, according to generally accepted medical standards, to effectively treat your disabling conditions; and
> -- You are receiving the most appropriate treatment and care, which conform generally with accepted medical standards, for your disabling conditions by a doctor whose specialty and experience is most appropriate for your disabling conditions, according to generally accepted medical standards.

The record shows that Muzyka visited her attending physician, Dr. Hasan, on the following dates: January 29, 2002; June 20, 2002; September 4, 2002; December 4, 2002; June 4, 2003; July 10, 2003; and August 7, 2003. Despite these records and previous medical care from other doctors, Unum found that seven visits to her attending doctor over approximately a year and a half time period was not regular care. Instead, Unum found these visits to be regular check-ups, and inconsistent with a total loss of functioning capacity and chronic pain.

Additionally, Unum's medical specialists found that Muzyka's treatments were inconsistent with standard medical procedures. Unum stated that the criteria established by the American College of Rheumatology were not noted in Muzyka's diagnosis of Fibromyalgia. Additionally, Center for Disease Control criteria were not documented for the diagnosis of Chronic Fatigue Syndrome. Further, Muzyka was diagnosed with major depression and was taking medications for it. Depression is considered an exclusionary diagnosis for Chronic Fatigue Syndrome. Finally, Unum found that the strains and sprains afflicting Muzyka were temporary and should be healed after six weeks. Therefore, Unum terminated benefits completely in January 2003, despite the fact that under the terms of her policy Muzyka's benefits officially ended six months earlier.

Muzyka appealed the denial in February of 2003. Unum responded in March 6, 2003 affirming their denial, and stating that Muzyka was capable of light to sedentary work primarily based on a functional capacity evaluation (FCE) conducted in May 2000.

The FCE reported that Muzyka had exhibited inappropriate illness behavior during the evaluation. Inappropriate illness behavior is an observable and measurable behavior which is out of proportion to the impairment. Also in May of 2000, Unum's vocational consultant performed a transferable skills analysis (TSA) to determine whether Muzyka had acquired skills in her RN position that she could transfer to a position that required only light to sedentary work. The nursing positions that the consultant determined the Plaintiff could perform included: Quality Assurance Coordinator, Utilization Review Coordinator, Managed HealthCare Manager, Discharged Planner, Insurance Case Manager, Nurse Consultant, and Triage Nurse. Unum then conducted a labor market survey that concluded sedentary to light work positions were available within Muzyka's geographical area. Additionally, on August 8, 2000, when the results of the FCE were explained to Muzyka, she verbally agreed that she was capable of performing light to sedentary work.

Muzyka responded to her claim denial by attempting to update the record with more complete health records. Muzyka informed Unum that her next scheduled appointment with Dr. Hasan was not until September 3, 2003. Her benefits had been terminated on June 5, 2002, with a six months grace period for further review. Unum then informed Muzyka that any medical information submitted in September 2003 would not be relevant to her appeal. When making a decision as to whether or not to grant benefits, Unum was guided only by what is in the administrative record prior to the June 5, 2002, cut off date. Thus, Unum claimed that any information submitted past that date was not relevant to Unum's determination.

Muzyka also sought to have the Kwalwasser documents submitted into her administrative record for review. In a letter written to Unum on April 14, 2003, Muzyka attached the Kwalwasser documents, and asked that the documents be placed in her file and subject to administrative review. The Kwalwasser documents consisted of a series of previous lawsuits in which Unum, among many other life insurance companies, settled lawsuits involving the denial of long term disability claims. Many of the documents dealt with other insurance companies and are not relevant to this specific claim. Although the insurance companies named in the Kwalwasser documents are now merged under one parent company, at the time of most of these lawsuits Unum and the other

companies were competitors.  Muzyka wishes to use the documents in which Unum was actually involved to establish the bad faith of Unum's claims reviewers.

## STANDARD OF REVIEW

Although the parties have filed their motions as Summary Judgments, benefit determinations under ERISA are more properly construed as a Motion for Final Judgment.  Providence v. Hartford Life & Accident Ins. Co., 357 F.Supp.2d 1341, 1342 n. 1 (M.D. Fla. 2005).  The Court sits in more of an appellate capacity than as a trial court, and the Court's task is to review the benefit decision based on the administrative record available to the decision maker at the time he or she made the decision.  Id.  Since no additional evidence is generally taken, the usual standard for Summary Judgment, whether there is a genuine issue of material fact, does not apply.  Id.; see also Bendixen v. Standard Ins. Co., 185 F.3d 939, 942 (9th Cir. 1999).

A person may bring a civil action to recover benefits due under a plan, or to enforce rights under the terms of the plan under 29 U.S.C. section 1132(a)(1)(B). Firestone Tire & Rubber Co. v. Bruch, 489 U.S. 101, 108 (1989).  However, the ERISA statute does not provide a standard of review for suits challenging benefit eligibility determinations.  Firestone, 489 U.S. at 109.  Therefore, the Supreme Court determined that a "denial of benefits challenged under §1132(a)(1)(B) is to be reviewed under a *de novo* standard unless the benefit plan gives the administrator or fiduciary discretionary authority to determine eligibility for benefits or to construe the terms of the plan."  Id. at 115.  Based on this determination, the Eleventh Circuit has developed three standards of review for an administrator's plan interpretations: "(1) *de novo* where the plan does not grant the administrator discretion; (2) arbitrary and capricious when the plan grants the administrator discretion; and (3) heightened arbitrary and capricious where there is a conflict of interest." Buckley v. Metro. Life, 115 F.3d 936, 939 (11th Cir. 1997).

The subject policy provides: "When making a benefit determination under the Policy, Unum has discretionary authority to determine eligibility for the benefits, as well as to interpret the terms and provisions of the Policy."  Since Unum has such discretionary power, and Unum pays the claims from its own assets, the heightened arbitrary and capricious standard of review is appropriate.

Under Brown v. Blue Cross and Blue Shield of Ala., 898 F.2d 1556 (11th Cir.

1990), when the plan fiduciary making the benefit decision is also the insurance company paying the claims, the arbitrary and capricious standard must be contextually tailored. Id. at 1563-1564. Thus, this Court's review is limited to reviewing only the facts known to Unum when the claim decision was rendered, and the Court is not required to consider the fiduciary's self-interest unless the Court determines that the benefit determination was wrong.

## DISCUSSION

The first issue this Court must decide under the heightened arbitrary and capricious review is whether the administrator's interpretation of the insurance plan was wrong. In Frados v. Continental Casualty Co., 363 F. Supp.2d 1349 (S.D. Fla. 2005), the court held that "[A] court must first look to a plan administrator's policy-language interpretation to determine 'correctness' from 'the perspective of *de novo* review.'" Id. at 1359; see also Brown v. Blue Cross and Blue Shield of Ala., 898 F.2d 1556, 1567 n.12 (11th Cir. 1990) (finding that *de novo* review is the appropriate standard used to determine if the fiduciary's interpretation of the policy was correct.) When conducting *de novo* review of the fiduciary's interpretation, the court may review evidence outside the administrative record if needed. See Moon v. Am. Home Assurance Co., 888 F.2d 86, 89 (11th Cir.1989); Walke v. Group Long Term Disability Ins., 256 F.3d 835, 840 n. 1 (8th Cir. 2001) ("Under the de novo standard of review, a district court has some discretion to allow the parties to supplement the record that was before the plan administrator.") Thus, in determining whether Unum's interpretation of the policy was correct, this Court is permitted to review information that is not a part of the administrative record if needed.

Unum's interpretation of the plan was correct. After twenty-four months of receiving disability benefits, Muzyka would only continue to receive long term disability if she was disabled from performing any gainful occupation. According to the policy, "After [twenty-four] months of payments, you are disabled when Unum determines that due to the same sickness or injury, you are unable to perform the duties of any gainful occupation for which you are reasonably fitted by education, training, or experience." Gainful occupation is defined as, "an occupation that is or can be expected to provide [the insured] with an income at least equal to [sixty percent] of [his or her] indexed

monthly earnings within [twelve] months of your return to work." The language of the policy is clear and Unum did not have to perform any substantial policy interpretation. Unum was simply reevaluating Muzyka's sickness to determine if, after twenty-four months of payments for own occupation disability, she was still incapable of performing any gainful employment. The terms of the policy are clear, and Unum's interpretation of the policy was correct.

The issue then turns on whether Unum's factual determinations under the language of the plan were arbitrary and capricious. Frados v. Continental Casualty Co., 363 F. Supp. 2d at 1356. According to the Supreme Court in Jett v. Blue Cross and Blue Shield of Alabama, 890 F.2d 1137 (11th Cir. 1989), "When conducting a review of an ERISA benefits denial under an arbitrary and capricious standard, the function of the court is to determine whether there was a reasonable basis for the decision, based upon the facts as known to the administrator at the time the decision was made." Id. at 1139. In considering Unum's factual determinations under the language of the policy, this Court must examine Unum's decision for an abuse of discretion. Frados v. Continental Casualty Co., 363 F. Supp. 2d at 1356. In determining the reasonableness of this decision, this Court is only to examine the facts in the administrative record that were known at the time that the benefit determination was made. Jett, 890 F.2d at 1141.

This Court finds that Unum's denial of long term disability benefits was reasonable, and not tainted by self-interest. The record shows that Muzyka's health condition enabled her to perform light to sedentary work based primarily on the results of a functional capacity evaluation conducted in 2000. According to her policy then, she can only be considered disabled if there are no jobs that require only light to sedentary work in which Muzyka would earn sixty percent of her monthly earnings within twelve months of her return to work. Muzyka's transferable skills analysis revealed numerous jobs available to Muzyka that required only sedentary to light work, and in which Muzyka would earn a comparable income. Further, the labor market survey revealed that these positions were available in the Plaintiff's geographical region.

Muzyka argues that the FCE conducted in 2000 is three years old and does not reflect the true nature of her disability. She supports her claim primarily based on a visit to her attending physician, Dr. Hasan, in which he stated that Muzyka was suffering from

Fibromyalgia and was totally disabled. However, to obtain long term disability benefits, Muzyka's condition cannot be based entirely on self reported symptoms. The plan defined self-reported symptoms as, "manifestations of your conditions which you tell your doctor, that are not verifiable using tests, procedures, or clinical examinations standardly accepted in the practice of medicine." Muzyka argues that her Fibromyalgia is a subjective illness that cannot be diagnosed other than by her complaints to her doctor. She asserts that it is impossible to present objective evidence in support of a subjective illness. Further, Muzyka cites the holding in Mitchell v. Eastman Kodak Co., 113 F.3d 433 (3rd Cir. 1997) where a plaintiff is not required to present any evidence other than his doctor's diagnosis of Chronic Fatigue Syndrome. Id. at 442. The Third Circuit found that because the disease has no known etiology, a plaintiff should not be required to produce objective clinical evidence. Id. In the same manner, Muzyka contends that she can provide no objective evidence of Fibromyalgia because it is a subjective illness, and that her long term disability benefits cannot be denied on such grounds.

Also, Muzyka argues that the opinions of Unum's medical experts should not outweigh the opinion of her attending physician. However, in Turner v. Delta Family Care Disability & Survivorship Plan, 291 F.3d 1270, the Eleventh Circuit held that, where an ERISA plan affords discretionary authority to the administrator, courts do not have to give deference to the opinions of treating physicians. Id. at 1274. Likewise, in The Black and Decker Disability Plan v. Nord, 538 U.S. 822, 831 (2003), the Supreme Court held that the ERISA plan administrators are not obliged to accord special deference to the opinions of the treating physicians; see also Leipzig v. AIG Life Ins. Co., 362 F.3d 406, 409 (7th Cir. 2004) (finding that most of the time physicians accept at face value what patients tell them about their symptoms; but insurers must consider the possibility that applicants are exaggerating in an effort to obtain benefits.)

In Muzyka's case, Dr. Hasan's diagnosis in September 2002 is too incomplete to support a finding of total disability. Although he did diagnose Fibromyalgia, there was no support in his record that her condition permanently disabled her. Further, the normal treatment of aerobic exercise or physical therapy was not recommended. In her affidavit, Muzyka stated that she had tried physical therapy in the past, but did not alleviate her

pain. However, she also stated that she was on medication that did help with her symptoms. Additionally, Muzyka had only been to the doctor seven times in a year and a half time period. Although seven visits seems like a lot to a healthy individual, it is not a lot to someone who is claiming to be totally disabled and in chronic pain. Muzyka justified her infrequent doctor visits stating that they were not required because she could control flare-ups with medication. She also admitted in a letter to Unum dated October 2, 2003, that she could control her bowel symptoms through diet and exercise. Muzyka was not under any chiropractic care at the time, but only remained under the care of her primary physician. The ability to control her symptomology and the infrequent need of doctor visits suggests that Muzyka is capable of being gainfully employed and, therefore, cannot be considered completely disabled.

Furthermore, Unum's doctors did not deny Muzyka's claim based solely on their rejection of Dr. Hasan's medical opinion. In fact, Unum assumed that Hasan's diagnosis was correct, and that Muzyka was suffering from Fibromyalgia. However, in light of other factors, Unum still found that this diagnosis did not preclude her from performing light to sedentary work. The record also shows that Muzyka had exhibited inappropriate illness behavior in the past, or the symptoms she described did not necessarily correlate to her diagnosed diseases. Muzyka was also diagnosed with major depression. The Unum medical advisors cited depression as an exclusionary symptom for a diagnosis of Chronic Fatigue Disorder. Additionally, after her past FCE, Muzyka agreed that she was capable of performing light to sedentary work. Later, she stated that her condition had not changed much since the time these tests were conducted. For all these reasons, Muzyka was denied benefits.

Muzyka argues that all the information relied upon by Unum to make their decision was not a correct assessment of her condition. The FCE and the TSA in the record were three years old at the time that Unum made their termination decision. Muzyka further contends that she attempted to update the record and that Unum did not evaluate her new submissions. Instead, Unum disregarded the new medical information as irrelevant. Muzyka attempted to submit into evidence a doctor's report from September 2003, which occurred after the June 5, 2002, termination date and the six month reservation of rights period. In evaluating her appeal, Unum is required only to

look at the medical records prior to the June 5, 2002, date.  Additionally, this Court cannot review any supplemented medical information that was not known to Unum at the time Unum made their decision.  Thus, any other evidence submitted by Muzyka that was not a part of the record cannot be considered by this Court.

In addition, Muzyka's contends that the payment of six months of benefits while Unum reevaluated her claim under a reservation of rights was not done as an act of good faith, but as a delay tactic and an admission of liability.  Muzyka cites <u>Wollard v. Lloyds & Companies of Lloyd</u>, 439 So.2d 217, 218 (Fla. 1983), to support her argument that the settlement agreement is an admission of guilt by Unum.  <u>Wollard</u> states that the "payment of the claim is, indeed, the functional equivalent of a confession of judgment or verdict in favor of the insured." <u>Id</u>.  The issue in <u>Wollard</u> was whether the insurance company had to pay the attorney's fees of the insured after the agreed upon settlement. <u>Id</u>.  However, the instant case does not involve an agreed upon settlement.  Further, <u>Wollard</u> does not hold that insurance companies that make payments under a reservation of rights automatically admit liability.  Finding such here would stretch the law beyond its meaning.

By introducing the <u>Kwalwasser</u> documents, Muzyka suggests that Unum's claims reviewers were acting in bad faith, and were predisposed to denying disability benefits without a complete review of Muzyka's claim.  Further, Muzyka argues that Unum did not review her claim according to the Regulatory Settlement Agreement (RSA), which was implemented by Unum (among other insurance companies) in response to the previous lawsuits filed.  The RSA was entered into by Unum after a multi-state market conduct examination was instituted in September 2003 by the Maine Bureau of Insurance, Tennessee Department of Commerce and Insurance, and the Massachusetts Division of Insurance.  The agreement states that claims will be reviewed by revised procedures, which includes obtaining complete medical records, contacting the attending physician, and conducting up to date medical evaluations and functional capacity evaluations.  Muzyka contends that Unum did not follow the procedures of the settlement agreement when reviewing her claim, and that the settlement itself is a showing of bad faith on Unum's behalf.

The documents relating to other lawsuits and other settlements are not relevant

and are unpersuasive in the instant case.  All evidence in the record suggests that Unum made a thorough review of Muzyka's claim.  The correspondence between Unum and Muzyka was prompt, and a timely review was made of all Muzyka's appeals.  Additionally, benefits officially terminated for Muzyka on June 5, 2002; however, Unum extended the payment of benefits for six extra months while they reviewed Muzyka's case, and is not seeking repayment of those benefits now.  There is much evidence in the record that Unum did in fact review Muzyka's claim during this period, and it was not simply a delay tactic.

All the evidence in the record suggests that Muzyka is capable of performing light to sedentary work, and can therefore be gainfully employed.  As a result, this Court cannot find that the Plaintiff was totally disabled.  Unum's denial was not unreasonable, and Summary Judgment should be entered for the Defendant.  Accordingly, it is

**ORDERED** that the Defendant's Motion for Summary Judgment (Dkt. 16) be **GRANTED**, and Plaintiff's Motion for Summary Judgment (Dkt. 20) be **DENIED,** the Clerk of Court being **DIRECTED** to enter judgment for the Defendant and close the case.

**DONE and ORDERED** in Chambers, in Tampa, Florida, on this 7th day of July, 2005.



ELIZABETH A. KOVACHEVICH
UNITED STATES DISTRICT JUDGE

Copies to: All parties and counsel of record